26 So.3d 154 (2009)
STATE of Louisiana, Plaintiff-Applicant
v.
A.D.A., Defendant-Respondent.
No. 44,791-JWC.
Court of Appeal of Louisiana, Second Circuit.
October 28, 2009.
Rehearing Denied November 19, 2009.
Charles Scott, District Attorney, for Applicant.
Brian H. Barber, Edwin L. Blewer, III, Assistant District Attorneys, Peter R. Flowers, Shreveport, for Respondent.
Before BROWN, GASKINS, and CARAWAY, JJ.
BROWN, Chief Judge.
The State of Louisiana (through the Caddo Parish District Attorney) filed an application for supervisory writ seeking review of a ruling of the juvenile court denying a motion to transfer the case to the district court for prosecution of the juvenile, A.D.A., as an adult. For the foregoing reasons, we reverse and remand for transfer to the district court.

Facts
A.D.A., born April 13, 1994, was charged with first degree murder by petition and affidavit filed with the juvenile court on April 15, 2009. On April 21, 2009, the state filed a motion to transfer the juvenile's case to district court where he could be tried as an adult pursuant to La. Ch. C. art. 857. At the request of the state, the juvenile was evaluated by a psychologist *155 who testified at the hearing on the motion to transfer held on May 21, 2009. At the conclusion of the hearing, the trial court considered the evidence in light of the factors enumerated in La. Ch. C. art. 862 and concluded that the state had failed to meet its burden justifying transfer to district court. Subsequently, the state filed a supervisory writ and this court stayed adjudication pending determination of the writ.
On April 9, 2009, A.D.A. was at the home of his aunt, Wanda Adams Tucker. During the evening, Wanda's husband Victor, the victim, got into an argument with A.D.A. and asked him to leave the home. When A.D.A. refused to do so, Victor called 911 to report a disorderly person, but by the time the police arrived, A.D.A. had left the home. A.D.A. later returned to his aunt's house, pounded on the door, and demanded entry while threatening Victor. As Victor was calling 911, A.D.A. kicked in the door, entered the home and shot Victor in the chest. A.D.A. subsequently left his aunt's house. Both Wanda and her daughter Shantasia observed the shooting, and within a short time A.D.A. was apprehended at his mother's home.
The hearing on the motion to transfer the juvenile's case to district court was held on May 21, 2009. Witnesses included Dr. Pamela McPherson, appointed by the court to evaluate A.D.A., and two employees of the Office of Juvenile Justice Services, Christy Martin and Kim Scott. Dr. McPherson also prepared a report detailing her evaluation of A.D.A. A.D.A.'s social and family history are partially documented in Dr. McPherson's report.
At the time of this incident, A.D.A. was a 14-year-old (four days shy of his 15th birthday) boy living with his mother and Uncle Kenny in the Ingleside area of Shreveport, Louisiana. A.D.A.'s uncle suffers from a seizure disorder and mental retardation. A.D.A. attended regular classes at Bethune Middle School but had received special education services in the past. The report also indicates that A.D.A. has a history of juvenile justice involvement and includes diagnoses of mild mental retardation, ADHD, cannabis abuse, and a childhood onset conduct disorder, solitary aggressive type.
Beginning at eight years of age, A.D.A. began receiving mental health services as a result of academic and behavioral difficulties. He was diagnosed with ADHD and treated with medication with limited success. A.D.A.'s first run-in with the juvenile justice system came in March 2005 when he was adjudicated a delinquent. While he and his mother spent the following year and a half regularly participating in anger management classes and therapy, A.D.A. continued to defy authority at home and at school and repeatedly violated the conditions of his probation by smoking marijuana, receiving school suspension and disregarding curfew. In March of 2006, A.D.A. was admitted into Brentwood Behavioral Health Hospital after burning his Uncle Kenny's hand and threatening him with a knife. While there he was diagnosed with impulse control disorder, bipolar disorder, ADHD, conduct disorder, cannabis abuse, personality disorder and antisocial passive-aggressive compulsive features.
Having exhausted the resources of Caddo Parish, A.D.A. was transferred to the Office of Juvenile Justice Services which placed him in the Joy Home for Boys. A psychological evaluation performed upon his transfer diagnosed a conduct disorder, ADHD, marijuana abuse and mild mental retardation. A.D.A. remained at Joy Home for four months until his removal in February 2007 at the request of the facility's staff. Specifically, the staff complained of A.D.A.'s treatment of staff and *156 peers, defiance, verbal and physical aggressiveness and noncompliance with treatment and program goals.
A.D.A. was then placed at Hope Youth Ranch where he received special education services and reportedly thrived. His grades improved and he successfully passed the LEAP test allowing promotion to the 5th grade. In the fall of 2007 he returned home and was enrolled in Bethune Middle School. Once enrolled, A.D.A. began engaging in disturbing criminal and disruptive behavior ranging from disobedience to stealing and possessing weapons. Eventually he was taken back into custody after stealing a BB gun from Dick's Sporting Goods store in March 2008. A.D.A. was returned to the Hope Youth Ranch, but this time did not thrive in the program, incurring two additional property damage charges before his transfer to the Ware Juvenile Detention Center on October 28, 2008. One month later A.D.A. was placed in various foster homes through the LA Mentor program. After his case was reviewed by Judge Paul Young, A.D.A. was allowed to return to his mother's home on March 2, 2009.
With respect to the present incident, A.D.A. admitted that on the evening of April 9, 2009, he had been at his Aunt Wanda's home with two friends when her husband, Victor, chased him and his friends out of the home and tried to hit them. Victor also allegedly threatened to kill A.D.A. A.D.A. got mad and admitted that he was not doing as he was told. Eventually, Uncle Vic called the police and A.D.A. left. He went to retrieve a gun he had bought a week earlier from a "crack head" and which he had placed in some bushes to hide from his mother. A.D.A. returned to Aunt Wanda's home with the gun where he intended to shoot his uncle in the arm "to let him know not to mess with [him]." A.D.A. banged on the door and proceeded to argue with his uncle. Despite the pleas of his aunt and friends, A.D.A. fatally shot his uncle.
At the conclusion of the report, Dr. McPherson indicates her belief that there is a "substantial opportunity for [A.D.A.]'s rehabilitation within the juvenile justice system." Dr. McPherson reiterated this conclusion at the hearing on the motion to transfer.
Specifically, when asked about why she believed that rehabilitation was possible when the juvenile justice system had obviously failed to have that effect in its earlier dealings with A.D.A., the doctor cited the services available at the Swanson Youth Home.[1] While she admitted that she had not reviewed any information from the Office of Juvenile Justice Services regarding the programs available at Swanson, Dr. McPherson indicated familiarity with several youths who had been successfully treated there and claimed to have spoken to the developer of the Swanson's mental health program, Dr. Steven Phillipi.[2]
Contrary to this assessment, two members of the Office of Juvenile Justice Services, Christy Martin and Kim Scott, testified that there are no programs available within the system that have not previously been provided to A.D.A. and that the net effect of those services was a failure at rehabilitation. The testimony indicated that the Office of Juvenile Justice evaluates juveniles and selects services based upon those evaluations to ensure that programs *157 are tailored to the needs of each juvenile. Further, as A.D.A. has been provided services by the Office of Juvenile Justice numerous times, some programs have been offered to him multiple times without any corresponding reduction in his lawless behavior.
The trial court noted that A.D.A.'s age, maturity and sophistication weighed in favor of transfer. Specifically, the court did not believe that A.D.A. suffered mild mental retardation after observing his participation in court proceedings, and considering the fact that he had passed the LEAP exam. The court also found that the seriousness of the crime, the calculated shooting of an unarmed human being, weighed in favor of transfer.
The trial court found that past efforts at rehabilitation had been unsuccessful and refused to attribute this failure to the lack of appropriate academic accommodations being made whenever the child returned to the school system. Lastly, the trial court found that there was no evidence that the child's behavior was related to his alleged retardation or his impulsivity. Weighing against all this, however, the trial court considered the evidence regarding the services which would be available upon A.D.A.'s placement at Swanson. The trial court noted that the evidence showed that Swanson could handle children who have committed murder and who suffer from the same mental health disorders as A.D.A. More importantly, the court noted that A.D.A. had not previously been placed or treated at Swanson and thus its programs could not be said to have failed.
At the conclusion of the hearing, Judge Young reviewed the evidence and law and determined that the state had failed to show that there was no substantial opportunity for rehabilitation and, as a result, denied the transfer. His oral opinion rested upon the report and testimony of Dr. McPherson, and he concluded that as A.D.A. has never been placed in a secure setting, he should be given this opportunity for rehabilitation prior to facing criminal charges in adult court.
The state argues that this conclusion was an abuse of discretion because Dr. McPherson's opinion about the possibility of rehabilitation was, by her own admission, a reference to A.D.A.'s ability to advance academically "with reasoning ability" and "emotional regulation" to a point more closely resembling his chronological age, the medical definition of rehabilitation, and not a reference to A.D.A.'s potential for recidivism, the legal definition of rehabilitation. The state further avers that Dr. McPherson's opinion referenced only a "possibility" of rehabilitation, which is less than the statutory requirement of a "substantial opportunity for rehabilitation."

Discussion
Louisiana Children's Code Article 857 authorizes the juvenile court to conduct a hearing to consider whether to transfer a child, 14 years of age or older, to district court for prosecution when a delinquency petition is filed alleging that the child has committed one of several enumerated offenses, including first and second degree murder. The factors to be considered in adjudicating such a motion are set forth in La. Ch. C. art. 862, which provides, in part:
A. In order for a motion to transfer a child to be granted, the burden shall be upon the state to prove all of the following:
(1) Probable cause exists that the child meets the requirements of Article 857.
(2) By clear and convincing proof, there is no substantial opportunity for the child's rehabilitation through facilities *158 available to the court, based upon the following criteria:
(a) The age, maturity, both mental and physical, and sophistication of the child.
(b) The nature and seriousness of the alleged offense to the community and whether the protection of the community requires transfer.
(c) The child's prior acts of delinquency, if any, and their nature and seriousness.
(d) Past efforts at rehabilitation and treatment, if any, and the child's response.
(e) Whether the child's behavior might be related to physical or mental problems.
(f) Techniques, programs, personnel, and facilities available to the juvenile court which might be competent to deal with the child's particular problems.
The determination of whether a youth is amenable to rehabilitation is a matter within the sound discretion of the juvenile court which has the opportunity to hear the evidence and observe the juvenile. However, this discretion is limited in that it must reflect consideration of the factors outlined in Article 862. See State v. Davis, 32,379 (La.App. 2d Cir.09/22/99), 749 So.2d 701. Further, these factors should be evaluated consistently with our legislative scheme, which since 1979 has not favored noncriminal treatment of juveniles. State v. Perique, 439 So.2d 1060 (La.1983).
In its brief, the state relies upon this court's holding in State v. Davis, supra, and our holding in that matter is instructive. See also State v. Havis, 03-2490 (La.04/30/04), 874 So.2d 153, citing State v. Davis. The Davis case involved a similar set of circumstances: a 14-year-old juvenile defendant with several prior adjudications of delinquency facing charges which included attempted first degree murder. The juvenile was transferred to district court, pled guilty, and later appealed his sentence, arguing that his transfer was unconstitutional. We affirmed his conviction and sentence.
In the matter sub judice, a contradictory hearing was held on May, 21, 2009, to determine whether A.D.A. should be transferred to criminal court. The probable cause hearing was also held at this time. The state presented its evidence, and defense stipulated that there is probable cause in this matter. Thus, the second prong of La. Ch. C. art. 862 requiring the state to prove that there is no substantial probability for rehabilitation presents the only bar to A.D.A.'s transfer to district court.
It is clear from the record, and Judge Young's decision, that the juvenile possessed the age and mental sophistication to understand his actions and their consequences. The juvenile was almost 15 years old. He had been processed through the juvenile justice system many times. Thus, he had the requisite mental sophistication to understand the charges against him. A.D.A.'s statements regarding the defense of self-defense support this conclusion. We do not find that any mental deficiencies were sufficiently profound to prevent this knowledge and understanding.
Further, A.D.A. is charged with first degree murder. There is no more serious charge justifying protection for the community at large. Additionally, a review of the juvenile's criminal record lists at least nine prior adjudications of delinquency. He has perpetrated several violent crimes against persons. Thus it appears that his criminal behavior is escalating.
*159 Further, as stated by the witnesses from the Office of Juvenile Justice, A.D.A. has been offered every relevant service. In fact, he has been offered some of the services several times. There are no new programs to offer him. Further, the individuals from the Office of Juvenile Justice are more familiar with this juvenile's case, history, and the range of services he has been provided. These individuals saw no reason to believe that A.D.A. could be rehabilitated. Although Dr. McPherson found otherwise, it is clear from the record that she failed to assess the legally relevant issue, recidivism.
Our statutes and jurisprudence do not require the implementation of every conceivable treatment methodology. It is sufficient that rehabilitation services have been offered in the past, and those services have failed to rehabilitate A.D.A. In this matter, the state presented sufficient evidence to prove by clear and convincing evidence that there is no substantial opportunity for A.D.A.'s rehabilitation. Accordingly, we find that the juvenile court abused its discretion and hereby reverse its determination in this matter.

Conclusion
For the foregoing reasons, the decision of the juvenile court is REVERSED. This matter is remanded for transfer to district court.
CARAWAY, J., dissents with written reasons.
CARAWAY, J., dissenting.
I respectfully dissent. Dr. McPherson's expert testimony did address the opportunity for the child's rehabilitation which is the factor at issue under La. Ch. C. art. 862. Indicating that Article 862 was not followed, the majority determines that Dr. McPherson "failed to assess the legally relevant issue" of recidivism. Article 862 speaks only in terms of the "opportunity for the child's rehabilitation," and any review of that opportunity would necessarily involve consideration of recidivism. As the only mental health expert to testify, Dr. McPherson's testimony cannot be discarded by this twist of the legal standard. Moreover, any reliance on this court's ruling in Davis overlooks the important distinction of that case. In Davis, the juvenile court employed its discretion and transferred the youth to the district court for prosecution. That same discretion is now rejected by the majority. Thus, there is no legal deficiency in the analysis employed by Dr. McPherson, no contrary expert opinion by the state, and no abuse of the juvenile court's discretion.
CARAWAY, J., dissents with written reasons.
APPLICATION FOR REHEARING
Before BROWN, GASKINS, CARAWAY, PEATROSS and MOORE, JJ.
Rehearing denied.
CARAWAY, J., would grant rehearing.
NOTES
[1] According to Dr. McPherson's testimony the Swanson Facility offers services in a secure environment.
[2] It should be noted that although Dr. Phillipi developed the program originally utilized by Swanson, it is unclear whether he still maintains any association with, or oversight of, the program at Swanson.